UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY P.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 2:19-cv–05471-JC <br><br> MEMORANDUM OPINION AND ORDER OF REMAND |

**I.   SUMMARY**

On June 24, 2019, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of his application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively "Plaintiff's Motion" and "Defendant's Motion." (collectively, "Motions"). The Court has taken the Motions under submission

---

[1] Plaintiff's name is partially redacted to protect his privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 7, 2016, plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning on September 1, 2012, due to knee injury, gout, back pain, anxiety and depression. (Administrative Record ("AR") 268-71, 287). An Administrate Law Judge ("ALJ") subsequently examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 145-71). On May 24, 2018, the ALJ determined that plaintiff was not disabled through March 31, 2016, the date last insured. (AR 16-32). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: left knee chronic patella dislocation, osteoarthritis and degenerative joint disease/status post reconstructive surgery, and obesity (AR 21); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 23); (3) plaintiff retained the residual functional capacity to perform sedentary work (20 C.F.R. §§ 404.1567(a)) with additional limitations[2] (AR 23); (4) plaintiff could not perform any past relevant work (AR 27); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically document preparer, lens inserter, and

---

[2] The ALJ determined that plaintiff also: (i) could lift, carry, push and pull twenty pounds occasionally, ten pounds frequently; (ii) could stand and/or walk two hours in an eight-hour day; (iii) could sit for six hours in an eight-hour day; (iv) could never climb ladders, ropes or scaffolds; (v) could occasionally climb ramps and stairs; (vi) could occasionally balance and stoop; (vii) could never kneel, crouch or crawl; (vii) could not be exposed to extreme cold; and (viii) required a cane for ambulation. (AR 23).

bench assembler (AR 28-29); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 24)

On May 7, 2019, the Appeals Council denied plaintiff's application for review. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted); 20 C.F.R. §§ 404.1505(a), 416.905. To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4).

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy.  Id.

    **B.**  **Federal Court Review of Social Security Disability Decisions**

    A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard of review in disability cases is "highly deferential."  Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted).  When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

    Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."

Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record.  Brown-Hunter, 806 F.3d at 492 (citations omitted).  When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV. DISCUSSION

Plaintiff's sole contention is that the ALJ erred by failing to provide specific and convincing reasons to discredit plaintiff's statements and testimony.  (Plaintiff's Motion at 5-8).  Defendant argues that the ALJ's reasons are proper and sufficient.  (Defendant's Motion at 1-4).

For the reasons stated below, the Court finds that the ALJ erred in discounting plaintiff's testimony based on a failure to comply with recommended treatment.  Since the Court cannot find that the error was harmless, a remand is warranted.

### A. Pertinent Law

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process.  20 C.F.R. §§ 404.1529(a), (d).  Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her subjective symptoms ("subjective statements" or "subjective complaints") are

5

consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities. 20 C.F.R. §§ 404.1529(a), (c)(4); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4-10.³ When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities. See SSR 16-3p, 2017 WL 5180304, at *8. In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89.⁴ This requirement is very difficult to satisfy. See Trevizo,

---

³Social Security Rulings reflect the Social Security Administration's ("SSA") official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1). Although they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted); see also Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security rulings). Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation." See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11. The SSA subsequently republished SSR 16-3p making no change to the substantive policy interpretation regarding evaluation of a claimant's subjective complaints, but clarifying that the SSA would apply SSR 16-3p only "[when making] determinations and decisions on or after March 28, 2016[,]" and that federal courts should apply "the rules [regarding subjective symptom evaluation] that were in effect at the time" an ALJ's decision being reviewed became final. SSR 16-3p, 2017 WL 5180304, at *1, *13 n.27.

⁴It appears to this Court, based upon its research of the origins of the requirement that there be "specific, clear and convincing" reasons to reject or give less weight to an individual's subjective statements absent an affirmative finding of malingering, that such standard of proof remains applicable even when SSR 16-3p governs. See Trevizo, 871 F.3d at 678-79 & n.5 (citations omitted).

871 F.3d at 678 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and quotation marks omitted).

An ALJ's decision "must contain specific reasons" supported by substantial evidence in the record for giving less weight to a claimant's statements. SSR 16-3p, 2017 WL 5180304, at *10. An ALJ must clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement. Treichler, 775 F.3d at 1103 (citation omitted). Unless there is affirmative evidence of malingering, the Commissioner's reasons for rejecting a claimant's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks omitted), as amended (Apr. 9, 1996). "General findings are insufficient[.]" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). When an ALJ fails properly to discuss a claimant's subjective complaints, however, the error may not be considered harmless "unless [the Court] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Brown-Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will usually not be harmless").

### B. Plaintiff's Statements and Testimony

On a function report dated May 17, 2016, plaintiff wrote the following: He was "in constant pain" due to nerve and ligament damage, and lost his balance easily, making it difficult to stand, walk or sit for any length of time. (AR 307-09). He could not walk without a cane. (AR 307). Plaintiff did not make his meals, drive, or do any house or yard work, due to the pain and imbalance, but he shopped for groceries for about two hours once a week. (AR 309-10). For

activities, he read, wrote and watched television. (AR 311). He could only lift one or two pounds, and could walk only ten or eleven feet before needing to rest for at least forty-five minutes. (AR 312).

At the hearing on May 3, 2018, plaintiff's counsel noted that plaintiff has undergone a total of five knee surgeries – four on the left, one on the right. (AR 148-49). Plaintiff testified to the following: His left knee first began to bother him seriously around 2013, as a result of wear and tear over time, and his right knee began to hurt around 2016. (AR 157-58). He tried to work in 2016, as a maintenance mechanic at a McDonald's for about seven or eight days, but "had an accident there where [his] knee buckled and [he] fell," so could not work anymore. (AR 152). Plaintiff's knees buckle and swell often when he is standing or sitting, and the pain becomes "excruciating." (AR 153). Plaintiff had surgery on his right knee in February 2018, to repair a torn meniscus and ruptured ACL or tendon, but his knee still locks. (AR 158-59).

Plaintiff further testified: He was first prescribed crutches around 2013 (AR 164-65), and the last time he could walk without the assistance of crutches, a cane or a walker was in 2016 (AR 153). He has depended on a cane or walker every day since. (AR 153). He has also fallen numerous times since 2015, despite the use of an assistive device. (AR 165). He generally spends his time reading or watching television. (AR 156). He does not really cook because he "really can't stand for too long in one place," though he makes himself a bowl of cereal or an egg sandwich in the morning. (AR 156). Plaintiff needs "to move around" due to the swelling in his knee and legs (AR 156), and can sit for only about ten minutes at a time before changing positions (AR 165-66). He spends over five hours a day lying on his back. (AR 166). His adult sons do the grocery shopping. (AR 166).

**C.  Analysis**

The ALJ reviewed plaintiff's statements and found that his "medically determinable impairments could reasonably be expected to cause the alleged

symptoms," but determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (AR 24). The ALJ discounted plaintiff's statements based on evidence that plaintiff was non-compliant with some of his treatment and that the severity of his alleged limitations were not supported by the objective medical findings, including evidence that his symptoms showed some improvement after surgery in 2015. (See AR 24-26). Plaintiff contends that these were not legitimate reasons to reject his testimony. (Plaintiff's Motion at 6-8).

As for non-compliance, the ALJ noted that plaintiff "may have contributed to his symptoms by not complying with prescribed treatment." (AR 25). Specifically, the ALJ found that plaintiff's medical records indicated that plaintiff had caused a delay in his 2015 knee surgery due to missed appointments, and then failed to follow up with prescribed physical therapy and pain management after the surgery, "despite [plaintiff's] own reports of symptoms." (AR 25). Plaintiff contends that non-compliance with treatment was an improper basis here because the ALJ did not seek any explanation for the purported non-compliance. (Plaintiff's Motion at 7). Defendant argues that the ALJ was not required to seek an explanation. (Defendant's Motion at 1-2).

In discrediting a claimant's subjective symptom testimony, an ALJ may consider, among other grounds, the claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); see also Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.") (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). However, an ALJ cannot discredit testimony on this

ground if the claimant credibly provides a good reason for his failure to obtain or follow treatment.  See, e.g., Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("[B]enefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford.") (citing Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)); see also Molina v. Astrue, 674 F.3d at 1113-14 ("[A] claimant's failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'") (quoting Fair v. Bowen, 885 F.2d at 603).  To make an adverse determination on this issue, therefore, it is crucial that the ALJ consider whether the claimant had a reason for failing to follow prescribed treatment.  As SSR 16-3p provides:

> [I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. *We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints*. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p, 2017 WL 5180304, at *8 (emphasis added).

Here, the ALJ failed to consider whether plaintiff had an explanation for his apparent failure to follow prescribed treatment.  The ALJ could have asked plaintiff about this at the hearing, or at any other point before issuing the decision, but failed to do so.  This was error.  See Dubrawsky v. Berryhill, 2017 WL 1758054, at *7 (D. Or. May 2, 2017) ("[T]he ALJ erred by failing to comply with Social Security rules prohibiting ALJs from drawing any inferences from the

plaintiff's failure to follow prescribed treatment without first providing an opportunity for the plaintiff to explain or provide additional information.") (citing SSR 16-3p); Adams v. Berryhill, 2017 WL 1319833, at *4 (W.D. Wash. Mar. 21, 2017), report and recommendation adopted, 2017 WL 1318098 (W.D. Wash. Apr. 7, 2017) (ALJ erred by not considering whether plaintiff had an explanation for failing to follow prescribed treatment).

This error is compounded, here, by the minimal evidence of plaintiff's non-compliance. The ALJ cited three medical records to support his finding that plaintiff was failing to comply with prescribed treatment. (AR 25). Two of these medical records indicate, respectively, that plaintiff missed two medical appointments, which delayed plaintiff's 2015 surgery (see AR 539);[5] and that plaintiff failed to begin physical therapy within a month after it was recommended (see AR 417).[6] The third record, a treatment note cited by the ALJ to show that plaintiff "was not following up with . . . seeing a pain management doctor," does not even seem to support the ALJ's finding. (See AR 25, 438). The treatment note states, on October 28, 2015, that plaintiff had "an appt with pain management in 2m" – meaning, presumably, two months after October 28. (AR 438). Plaintiff's physician recommended the appointment because plaintiff had been "taking too much Norco." (AR 438). The record then indicates, on December 3, 2015 – *i.e.*, less than two months later – that plaintiff "ha[d] yet to see a pain

---

[5] The record at issue is a handwritten note, dated April 22, 2015, stating that Dr. Dietrick, the doctor who had been scheduled to perform plaintiff's knee surgery in March 2015, was no longer going to treat plaintiff because plaintiff "was non compliant, he missed two [appointments] he had." (AR 539). As the ALJ noted, plaintiff's knee surgery thus did not occur until July 2015. (AR 25, 352).

[6] The treatment note states that plaintiff's doctor recommended physical therapy on August 5, 2015, and plaintiff had not yet seen a physical therapist as of his next appointment, on September 2, 2015. (AR 25, 417). It is unclear when plaintiff began physical therapy.

doc."[7] (AR 438). The doctor thus "gave him oxycodone 30, #90 because he takes too much tylenol in norco." (AR 438).

The record does not demonstrate that this error was harmless. Aside from non-compliance with treatment, the ALJ based his evaluation of plaintiff's statements on a lack of objective medical evidence, including some indications that plaintiff showed improvement after his 2015 knee surgery. (AR 25, 27). This is not a sufficiently "clear and convincing" basis to discount plaintiff's statements. As plaintiff points out, a lack of objective medical evidence cannot be the sole reason to discount subject symptom testimony. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."). Moreover, the record at least supports that plaintiff continued to experience persistent pain and limited functioning even after the 2015 knee surgery, notwithstanding some apparent physical improvements that the ALJ referenced. (See AR 25, 438). For example, on October 28, 2015, plaintiff's physician noted:

> [Plaintiff] was doing some light resistance and heard a pop, now some effusion coming through the lateral release. I explained this is to be expected due to the severe degenerative disease from the patella being dislocated for many years. The PF [patellofemoral] joint is no longer congruent. Now that the patella is reduced, he has better strength but I expect he will have pain.

---

[7]Beyond these cited treatment notes, the record remains unclear on this issue. A different treatment note indicates that as of December 3, 2015, plaintiff still had "not set up an appointment with pain management yet." (AR 497). Yet, even if plaintiff did fail to follow up with pain management treatment, other records suggest that this may have been due to insurance coverage. A treatment note from May 5, 2016, states that plaintiff's "insurance provider has not allowed him to see a pain management doctor that can manage his medications for the long term." (AR 600). If so, the ALJ may not be able to rely on this as a basis to discredit plaintiff's statements. See Warre, 439 F.3d at 1006. These issues at least require clarification on remand.

(AR 438). About a month later, on December 3, the physician noted: "[Plaintiff] is a little more painful which I think is due to his activity. I explained that he will certainly have some pain[.]" (AR 438). On January 12, 2016, plaintiff "indicate[d] that the pain seem[ed] to be worse than before the surgery and the knee [was] very swollen." (AR 503). He "report[ed] feeling slightly better" on February 3, yet he "continue[d] with daily pain when walking." (AR 497).

In sum, the ALJ materially erred in discrediting plaintiff's subjective symptom testimony, and further development and consideration of the record are needed. Accordingly, a remand is warranted so that the ALJ can reevaluate subjective complaints and the medical evidence.

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED and this matter is REMANDED for further administrative action consistent with this Opinion.[8]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 14, 2020

                                          /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

[8] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted). The Court has determined that a reversal and remand for immediate payment of benefits would not be appropriate.